UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUILDERS BANK, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br> Defendant. | No. 15 C 6033 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Builders Bank ("Bank") is a financial institution regulated and insured by the Federal Deposit Insurance Corporation ("FDIC"). In this action, the Bank brings a two-count Amended Complaint seeking judicial review under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* ("APA"). In Count I, the Bank asks this Court to alter an evaluative examination rating (referred to as a "CAMELS" rating) given to it in a joint examination conducted by the FDIC and the Illinois Department of Financial and Professional Regulation—Division of Banking ("IDFPR"). In Count II, the Bank seeks judicial review of a determination by FDIC bank examiners that the Bank had failed to comply with two provisions in a 2010 consent order it had entered into with the FDIC and IDFPR addressing numerous unsafe or unsound business practices. In both counts, the Bank alleges that the FDIC's conduct was arbitrary and capricious under the APA.

This case is presently before me on Defendant's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). For the following reasons, Defendant's motion is granted and the case is dismissed.

1

## BACKGROUND

Builders Bank was chartered by the State of Illinois under the Illinois Banking Act, 205 ILCS 5/1 *et seq.* ("IBA"). Because the Bank is a state-chartered bank that is not a member of the Federal Reserve, the FDIC acts not only as the insurer of the Bank's deposits, but also as the Bank's "appropriate Federal banking agency."

Through the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 *et seq.* ("FDI Act"), Congress requires appropriate federal banking agencies to "conduct a full-scope, on-site examination" every twelve months, or every eighteen months for well-capitalized institutions that meet other criteria. 12 U.S.C. § 1820(d). To minimize the disruptive effects of duplicative examinations, each appropriate federal banking agency of a state-chartered bank may alternate its examination duties with the regulatory agency of the chartering state, which is the IDFPR in the case of Builders Bank.

As the insurer for all banks, the FDIC bears responsibility for detecting and correcting unsafe conditions in every bank it insures. This examination scheme requires the FDIC to rely on reports of examinations from the other appropriate Federal banking agencies, as well as state regulators, to fulfill its mandate to promote the safety and soundness of the nation's banking system. Because Congress recognized that such reliance necessitated a reliable, uniform methodology for the examination and risk rating of banks by the various regulators, Congress created the Federal Financial Institutions Examination Council, which in turn issued the Uniform Financial Institutions Rating System ("UFIRS"). UFIRS is commonly known by the acronym "CAMELS," representing the following six components: Capital, Asset Quality, Management, Earnings, Liquidity, and Sensitivity. Each CAMELS component is assigned a numerical risk rating between 1 and 5, and the bank as a whole is assigned a composite numerical risk rating

2

between 1 and 5. For both metrics, a rating of 1 denotes the least amount of risk while 5 denotes the greatest amount of risk.

The FDI Act requires the FDIC to "establish a risk-based assessment system" for assessing and charging deposit insurance premiums to each bank it insures. The FDIC promulgated regulations establishing such a risk-based system that is primarily based on a bank's CAMELS risk rating.

The FDI Act also provides the FDIC with broad enforcement authority in the supervision of insured depository institutions. Specifically, Section 8 of the FDI Act permits the FDIC to issue cease-and-desist orders directing institutions to change practices deemed unsafe or unsound. 12 U.S.C. § 1818(b), (c), (d). Various portions of Section 1818 provide for administrative hearings before an administrative law judge ("ALJ") in connection with these enforcement actions, and contested enforcement actions are decided by the FDIC's Board of Directors and ultimately appealable to the courts of appeals within a specified time frame.

In 2010, the FDIC and IDFPR documented numerous weaknesses in the Bank's operations. In this report, the Bank received a CAMELS composite rating of 4. Shortly after, the Bank was informed that the FDIC made an interim rating change downgrading the bank to a CAMELS composite rating of 5 due to continued deterioration in the Bank's financial condition. A CAMELS-5 rated institution exhibits "extremely unsafe and unsound practices or conditions" and "critically deficient performance." Institutions with this rating "pose a significant risk to the deposit insurance fund and failure is highly probable." 62 Fed. Reg. 752 (Jan. 6, 1997). On May 27, 2010, Builders Bank waived its right to a contested hearing before an ALJ and agreed to the entry of a consent order jointly issued by the FDIC and IDFPR pursuant to Section 8(b) of the FDIC Act (the "Consent Order").

Between 2010 and 2014, the Bank was examined by the FDIC and IDFPR on a yearly basis and received a CAMELS composite rating of 5 on each examination. In a Report of Examination that was provided to the Bank on June 3, 2015 (the "ROE"), the Bank received a CAMELS composite rating of 4, reflecting a modest improvement in the Bank's overall condition. The Bank, however, contends that it should have received a CAMELS composite rating of 3.

The ROE also found several instances of non-compliance with the Consent Order. The Bank's Total Risk-Based Capital Ratio was found to be under the 13% level required by the Consent Order. Additionally, the FDIC found the Bank's plan to manage its concentrations of credit to be deficient.

The June 3, 2015 cover letter transmitting the ROE to Builders Bank indicated that the FDIC was contemplating an enforcement action and supplied the Bank with an Amended Consent Order for consideration. The correspondence noted that the FDIC's notification of the intent to undertake a formal enforcement action terminated the Bank's right to appeal "the facts and circumstances that form the basis for the formal enforcement action" through the FDIC's Supervision Appeals Review Committee ("SARC") process.

One week later, on June 10, 2015, the Bank asked the FDIC's Chicago Regional Office for an advisory opinion as to which FDIC findings and conclusions would be appealable. After a series of email exchanges, the Chicago Regional Office stated on June 26, 2015 that:

> It would not be appropriate for me to determine whether each finding or recommendation in the Report of Examination may or may not be subject to appeal. The FDIC established a formal process whereby you may file a request for review of a material supervisory determination. Your next step is to determine if you will file a request for review . . .

The Bank then submitted two letters to the FDIC's Washington Office inquiring whether it

4

could appeal four categories of examination report findings, including its composite CAMELS rating and the findings of non-compliance with the Consent Order.

On July 7, 2015, eleven days after sending its first letter to the FDIC's Washington Office and before the FDIC responded, the Bank filed its initial complaint in this court asserting it could not appeal its CAMELS rating through the SARC process. On July 31, 2015, the Executive Secretary of the FDIC transmitted a letter to the Bank titled "Clarification of Appeal Rights," which stated that the Bank could appeal its assigned CAMELS rating but could not appeal the finding of non-compliance with the Consent Order. The FDIC also extended the time period to request review under the SARC Guidelines by another sixty days. The Bank did not file an appeal through the SARC process.

## LEGAL STANDARD

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chi., Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## DISCUSSION

Subject matter jurisdiction is a threshold issue that must be addressed prior to adjudicating the merits. With regards to Count I, the FDIC contends that (1) the APA precludes judicial review of agency action that is "committed to agency discretion by law" and (2) the

Bank failed to exhaust its administrative remedies. With regards to Count II, the FDIC argues that Section 8 of the FDIC Act expressly withdraws district court jurisdiction to review, interpret, or modify consent orders such as the one in this case.

I.  **Count I**

Although the APA permits judicial review of certain types of final agency action, the APA precludes judicial review of agency action where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Count I falls squarely into this exclusion. In the International Lending Supervision Act of 1983 ("ILSA"), Congress granted banking agencies "the authority to establish such minimum level of capital for a banking institution as the appropriate Federal banking agency, in its discretion, deems to be necessary or appropriate in light of the particular circumstances of the banking institution." 5 U.S.C. § 3907(a)(2).

Although the Seventh Circuit has been silent on this issue, the FDIC's discretion to set capital levels was recently reaffirmed in *Frontier State Bank v. FDIC*, 702 F.3d 588 (10th Cir. 2012). In *Frontier*, the Tenth Circuit noted that, "[p]rior to the enactment of the [ILSA], courts took a more active role in reviewing banking regulators' orders relating to capital" but that "ILSA's language . . . commits the setting of capital levels to bank regulators' discretion." *Frontier*, 702 F.3d at 595-96. The Tenth Circuit concluded that "Section 3907 of the ILSA forecloses our review of the FDIC's discretion without giving us any standard to determine the correctness of the FDIC's decision." *Id.* at 597.

In its briefing, Builders Bank argues that the setting of CAMELS composite rating differs from setting capital levels, and then attempts to revise its complaint to remove all language pertaining to capital levels. This line of reasoning does not hold any water. It would be

6

impossible to address the Bank's CAMELS rating without addressing the Bank's capital ratios and opining on what these ratios should be.

Even if the APA did not preclude judicial review of the Bank's assigned CAMELS ratings in the ROE, I would still dismiss Count I because Builders Bank failed to exhaust its administrative remedies. Before Builders Bank could seek judicial review under the APA in this Court, it must have first exhausted its administrative remedies through the FDIC's intra-agency SARC process. The Bank chose not to do this, even after the FDIC clearly informed it that it could seek review of its CAMELS rating and extended the deadline for filing an appeal.

## II.     Count II

In Count II, Builders Bank seeks to appeal a finding in the ROE that it had not complied with certain provisions of the Consent Order it had entered into with the FDIC in May 2010.

The FDI Act carves out consent orders from any form of judicial review unless the request is made by the FDIC. The FDI Act provides:

> The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section . . . and such courts shall have jurisdiction and power to order and require compliance herewith; *but except as otherwise provided in this section . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.*

12 U.S.C. § 1818(i)(1). Although the FDIC can seek enforcement of any outstanding order in district court, no other institution can do so.

Builders Bank chose to settle its claims with the FDIC in 2010 by entering into a

7

Consent Order under Section 8 of the FDI Act. The Bank now asks this court to affect the enforcement of the Consent Order by entering an order that indicates the Bank is in compliance with the Consent Order. The Bank's request for relief requires this court to review, interpret and potentially modify, or set aside portions of the Consent Order, which is explicitly prohibited by Section 1818(i).

## CONCLUSION

Defendant's motion is granted in its entirety, and Counts I and II are dismissed. Although Builders Bank filed a motion to amend its complaint, I am denying this motion because the deficiencies discussed above would not be cured by the Bank's proposed amendments.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 25, 2016